UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
THE NEW YORK CITY DISTRICT COUNCIL OF :
CARPENTERS PENSION FUND, NEW YORK CITY :
DISTRICT COUNCIL OF CARPENTERS WELFARE :
FUND, NEW YORK CITY DISTRICT COUNCIL OF :
CARPENTERS VACATION FUND, NEW YORK :
CITY DISTRICT COUNCIL OF CARPENTERS :
ANNUITY FUND, NEW YORK CITY DISTRICT :
COUNCIL OF CARPENTERS APPRENTICESHIP, :
JOURNEYMAN RETRAINING, EDUCATIONAL :
AND INDUSTRY FUND, NEW YORK CITY :
DISTRICT COUNCIL OF CARPENTERS CHARITY :
FUND, and NEW YORK CITY AND VICINITY :
CARPENTERS LABOR MANAGEMENT COOP- :
ERATION FUND, by MICHAEL J. FORDE, AND :
PAUL O'BRIEN, as TRUSTEES, :
:
                    Plaintiffs, :
:    07 Civ. 2712 (HB)
        - against - :
:    **OPINION & ORDER**
TADCO CONSTRUCTION CORP., :
:
:
                    Defendant. :
:
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge*:**

      On April 3, 2007, Michael J. Forde and Paul O'Brien, as Trustees of The New York City District Council of Carpenters Pension Fund et al.[1] (the "Funds") sought pursuant to Section 301 of the Labor Management Relations Act (the "LMRA")[2] against TADCO Construction Corp.

---

* Joshua Goldberg, a fall 2007 intern in my Chambers and a law student at Brooklyn Law School, and Giannina Berrocal, a spring 2008 intern in my Chambers and a law student at St. John's Law School, provided research assistance in conjunction with this Opinion & Order.

[1] New York City District Council of Carpenters Welfare Fund, New York City District Council of Carpenters Vacation Fund, New York City District Council of Carpenters Annuity Fund, New York City District Council of Carpenters Apprenticeship, Journeyman Retraining, Educational and Industry Fund, New York City District Council of Carpenters Charity Fund, and New York City and Vicinity Carpenters Labor Management Cooperation Fund.

[2] 29 U.S.C. § 185.

1

("TADCO") to confirm a January 20, 2007 arbitration award (the "Award") against TADCO.[3] TADCO opposed and moved to vacate. For the reasons set forth below, the Funds' motion to confirm and to award attorneys' fees (up to $5,000) is GRANTED, the Funds' motion to award costs is DENIED, and TADCO's cross-motion to vacate is DENIED.

## I. FACTUAL BACKGROUND

### A. The Parties and Relevant Agreements

At all relevant times TADCO was a New York corporation with its principal place of business in the State of New York and was an employer within the meaning of Section 3(5) of the Employee Retirement Income Security Act ("ERISA").[4] Compl. ¶¶ 7-8. The Funds were established pursuant to the LMRA[5] and are employee benefit plans under ERISA[6] and jointly administered, Taft-Hartley Trusts. Decl. of Andrew GraBois (July 20, 2007) (hereinafter "GraBois Decl.") Ex. A (hereinafter "CBA") at 40. *See* 29 U.S.C. § 186(c)(5).

The collective bargaining agreement (the "CBA") was between The District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "Union") and the General Contractors Association of New York, Inc. (the "Employers," which included TADCO), and required the Employers to make contributions to the Funds, based on hours worked by covered employees.[7] CBA Art. I, XI § 1. The Funds in turn provided pension, health, medical, welfare benefits and other benefits to covered employees and their beneficiaries. Compl. ¶ 6. To ensure that the Employers made the required contributions, the CBA required the Employers upon request to make available certain books and records for an audit by the Funds. CBA Art. XI § 7. The parties agree that the Funds, and their trustees, were not parties to the CBA. Tr. at 3:18-4:7.

A series of Agreements and Declarations of Trust (the "Trust Agreement") established

---

[3] Because the matter relates to TADCO's obligations to make benefit contributions under a collective bargaining agreement between it and the Union, Section 301 of the LMRA applies. *See Vittoria Corp. v. New York Hotel & Motel Trades Council, AFL-CIO*, 30 F. Supp. 2d 431, 434 (S.D.N.Y. 1998) (finding that "an action is deemed to 'arise under' Section 301 if resolution of the claim requires the court to construe a provision of the collective bargaining agreement") (quoting *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399 (1988)).

[4] 29 U.S.C. § 1002(5).

[5] LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5).

[6] ERISA §§ 3(1) and (3), 29 U.S.C. § 1002(1) and (3).

[7] The relevant time period of the CBA, *i.e.*, the period during which the work was performed, was July 1, 2002 through June 30, 2006. *See* CBA Art. I, IV.

2

and governed the Funds and was incorporated by reference into the CBA. CBA Art. XI § 1(a) ("The Employer [including TADCO] is bound by all the terms and conditions of the Agreement and Declaration of Trust with respect to each of the Fringe Benefit Funds [*i.e.*, the Funds], which Agreement and Declaration of Trust are hereby made part of this Agreement and shall be considered as incorporated herein.").[8]

**B.     The Arbitration Clauses**

The CBA mandated the final and binding arbitration of any dispute between the Union and an Employer before a designated impartial arbitrator, who "shall have full and complete authority to decide any and all issues raised by the submission and to award appropriate damages." CBA Art. XI § 11. *See also* CBA Art. V(4) ("It is the intent of the parties hereto that all disputes between them, both within and outside of the Agreement, shall be submitted to arbitration, as provided within, and that no defense to prevent the holding of the arbitration shall be permitted."). The arbitration provisions in the CBA expressly applied to the Union and the Employers, including TADCO.

The CBA contemplated that the Funds, through their trustees, could bring an action in court to recover delinquent contributions from an Employer, and should this occur enumerated certain recoverable damages. CBA Art. XI § 6(f). The Trust Agreement expressly required the Funds, through their trustees, to arbitrate any disputes relating to an Employer's provision of books and records, but to litigate any other type of dispute:

> Any matter involved in or arising under this Trust Agreement shall not be subject to the grievance or arbitration procedure established by any collective bargaining agreement; provided, however, that this provision shall not affect the rights and liabilities of any parties to those collective bargaining agreements; and further *provided that the collection or provision of records relating to Contributions which may be required under this Trust Agreement or collective bargaining agreement shall be subject to the grievance or arbitration procedure established by any collective bargaining agreement*.

Trust Agreement Art. VII § 13 (emphasis added).

**C.     The Arbitration**

The specific issues submitted to the Arbitrator were (1) whether TADCO owed the Funds

---

[8] Neither party appended the relevant Trust Agreements to its motion papers, and at the close of oral argument the Court *sua sponte* requested copies of all relevant Trust Agreements. Tr. at 26:15-18. On October 25, 2007, Plaintiffs produced to the Court the Trust Agreements, which are identical in all relevant respects and all effective July 1, 2004, for the New York City District Council of Carpenters Pension Fund, Welfare Fund, Vacation Fund, Carpenters Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund.

3

delinquent benefit contributions from April 1, 2004 through March 11, 2005, (2) whether TADCO was obligated under the CBA to provide the Funds books and records for an audit for the period from March 12, 2005 through June 30, 2006, and (3) the appropriate remedy, if any. GraBois Decl. Ex. B (hereinafter "Award") at 2.

In response to the Funds' Notice of Intention to Arbitrate, from June to August 2006 Frank DeMartino, TADCO's president ("DeMartino"), sent three letters to the Funds' counsel, with copies to the Arbitrator, requesting an adjournment of the arbitration on grounds that TADCO would furnish its books and records "when the outstanding audit items [relating to a prior audit] have been resolved." All three letters contained a disclaimer: "Nothing contained herein shall be construed as a waiver or modification of, or forbearance from exercising any of TADCO's rights, powers and privileges at law and/or in equity." DeMartino Decl. Exs. L, M and N. TADCO claims it received no response. DeMartino Decl. ¶¶ 38-40.

In August 2006 DeMartino sent three letters to the Arbitrator arguing that "there is no need" or "purpose" "for this arbitration" because on March 23, 2005 TADCO already had permitted the Funds to audit its books and records for the period from April 1, 2004 to March 11, 2005. DeMartino Decl. Exs. D, E and F. On December 5, 2006, DeMartino wrote the Arbitrator to request an adjournment of the arbitration "pending resolution of outstanding audit items" and included the same disclaimer as in the prior letters. DeMartino Decl. Ex. O. In none of these letters did TADCO object to the arbitrability of the dispute or assert that the Funds, not being parties to the CBA, could not resolve the dispute through arbitration.

DeMartino appeared at the December 11, 2006 arbitration hearing on behalf of TADCO and, for the fourth time since May 2006, requested an adjournment, this time because no stenographer was present.[9] Award at 3. The Arbitrator denied TADCO's request because arbitration does not require a stenographic record and "normally if a party requests a stenographic record, the party requesting it gives notice to all the other involved parties prior to the hearing." *Id.* DeMartino then moved again for an adjournment, because TADCO's counsel had a scheduling conflict and could not be present. *Id.* The Arbitrator denied this motion because TADCO's counsel should have "communicate[d] with counsel for the Funds and the Arbitrator in making application for an adjournment based upon a claim of a prior legal

---

[9] The Arbitrator initially had scheduled a hearing for May 24, 2006 but adjourned it at TADCO's request to August 28, 2006. At the request of TADCO's attorney, the Arbitrator adjourned the hearing again, to September 26, 2006, and then a third time, at TADCO's request, to December 11, 2006. Award at 2.

engagement." *Id.* at 3-4.

DeMartino, on behalf of TADCO, "under protest, complied with the Arbitrator's ruling, and the Arbitrator proceeded to take testimony and evidence." *Id.* at 4. DeMartino "made oral arguments, introduced evidence and examined witnesses." *Id.* TADCO's position throughout the arbitration hearing was that it had complied sufficiently with the Funds' audit requests. *Id.*

**D.    The Award**

In his Award dated January 20, 2007, the Arbitrator found that TADCO had violated the CBA and ordered it to furnish the Funds with books and records for the period from April 1, 2004 through June 30, 2006 so that the Funds could determine whether TADCO owed any contributions.[10] Award at 6. The Arbitrator retained jurisdiction in the event the Funds continued to allege that TADCO owed them delinquent contributions. *Id.* at 8. The Award also requires TADCO to pay its one-half share of the Arbitrator's fee, or $1,500, and directs that if the Funds are required to enforce any of the terms of the Award in court, TADCO must pay the Funds attorneys' fees of up to $5,000. *Id.* at 7.

## II. STANDARD OF REVIEW

An arbitration award should be enforced regardless of whether a district court agrees with the results on the merits, or even "if there is a barely colorable justification for the outcome reached." *Banco De Seguros Del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003) (internal citation omitted). Under the Federal Arbitration Act, a district court may vacate an arbitration award only under the limited circumstances set forth in Section 10(a):

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). To effectuate the federal policy favoring arbitration, this section "is to be accorded the 'narrowest of readings.'" *Blue Tee Corp. v. Koehring Co.,* 999 F.2d 633, 636 (2d Cir. 1993) (quoting *Andros Campania Maritima, S.A. v. Marc Rich & Co. A.G.*, 579 F.2d 691,

---

[10] The Award requires TADCO to furnish, *inter alia*, individual earning records, weekly payroll journals, quarterly and annual Federal and State tax returns, bank statements and cancelled checks, tax forms W-2, W-3, 1099 and 1096, cash disbursements, invoices and time sheets, general ledger and funds remittance reports. Award at 7.

5

703 (2d Cir. 1978)). "The showing required to avoid summary confirmation of an arbitration award is high," and a party moving to vacate the award has the burden of proof. *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 175 (2d Cir. 1998) (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)). S*ee also Local 338, RWDSU v. Farmland Dairies, Inc.*, 89 F. App'x 748, 748-49 (2d Cir. 2003).

In proceedings to confirm labor arbitration awards, the principal question for the court is whether the award "'draws its essence from the collective bargaining agreement,' [since] the arbitrator is not free merely to 'dispense his own brand of industrial justice.'" *Saint Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997) (internal citation omitted) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

## III. DISCUSSION

In its cross-motion to vacate the Award, TADCO argues the Arbitrator lacked jurisdiction over disputes between TADCO and the Funds because the CBA permitted arbitration between its signatories only, *i.e.*, the Employers, including TADCO, and the Union. TADCO argues that although the Funds were third-party beneficiaries of the CBA, nothing in the CBA evinced any intent by the parties to submit disputes between a signatory and a third-party beneficiary to arbitration. In the alternative, should this Court find that the Funds' claims were arbitrable, TADCO urges this Court to vacate or modify the Award because the Arbitrator acted outside the scope of his authority with respect to three specific aspects of the Award.

The Funds argue that TADCO waived any objection to the Arbitrator's jurisdiction because it participated in the arbitration without objecting to the arbitrability of the dispute. Because TADCO thus consented to the arbitration, the Funds argue, this Court may not consider, as a basis for vacating the Award, whether the CBA permitted the Funds to arbitrate. The Funds also argue that TADCO's motion to vacate or modify the Award is time-barred by the 90-day statute of limitations under New York state law.

This Court holds that TADCO waived any objection to the Funds' right to submit their claims to arbitration. Further, because the dispute was arbitrable and TADCO moved to vacate or modify the Award after the applicable statute of limitations period had expired, this Court holds that TADCO's motion to vacate was time-barred.

### A. TADCO Waived Any Objection to Arbitrability

Applying federal law, which governs here, this Court holds that TADCO waived its right

to object to the Arbitrator's jurisdiction because TADCO participated in the arbitration without objecting to the dispute's arbitrability. It is well settled in this Circuit that, if a party participates in arbitration proceedings without making an explicit objection to the submission of the dispute to arbitration, that party may be found to have effectively waived its right to object to the arbitration later.

Even the cases cited by TADCO require a party to object to arbitrability specifically, in order to participate in the arbitration without waiving any future objection to the arbitrator's jurisdiction. In *Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.*, 320 F.3d 362, 366-67 (2d Cir. 2003), for example, the Second Circuit found no waiver where the party expressly "asserted that there was no valid agreement to arbitrate" and "argued throughout the process that the arbitration clause was not valid, that the arbitration panel did not have jurisdiction over the dispute, and that [it] was not required to participate in arbitration." The court held that "if a party participates in arbitration proceedings without making a timely objection *to the submission of the dispute to arbitration*, that party may be found to have waived its right to object to the arbitration." *Id.* at 368 (emphasis added) (citing *Gvozdenovic v. United Air Lines*, 933 F.2d 1100, 1105 (2d Cir.), *cert. denied*, 502 U.S. 910 (1991) ("Although a party is bound by an arbitral award only where it has agreed to arbitrate, an agreement may be implied from the party's conduct.")).

In *Herman Miller, Inc. v. Worth Capital*, 1999 WL 132183, *1 (2d Cir. Mar. 9, 1999), the Second Circuit observed that "[a] party may be found to have waived its objection to arbitrability, . . . if it has participated extensively in arbitration proceedings without asserting its objection in timely fashion." The Circuit, however, found no waiver because the party "repeatedly reserved the right to contest the existence of an agreement to arbitrate," by, for example, telling the arbitration association that it "retain[ed] its right to seek to dismiss the demand on [the] . . . ground[] . . . that claimant is not a proper plaintiff because it is not a permitted assignee of the contract (and therefore can neither claim under the contract nor invoke its arbitration provisions)." *Id.* at *1. The party also requested a preliminary hearing "to raise with the arbitrator the fundamental legal issue as to whether claimant has any right at all, given that the contract on which the claim (and arbitration) is based is expressly non-assignable." *Id.* at *1. TADCO made no such specific objections here. *See also Sarhank Group v. Oracle Corp.*, 404 F.3d 657, 662 (2d Cir. 2005) (no waiver where defendant "objected repeatedly to its being a party to the arbitration" on the express ground that it had not signed the agreement containing the

arbitration clause).

The facts do not support TADCO's argument that it "timely and repeatedly" objected to the arbitration. As described above, DeMartino sent numerous letters to the Funds' counsel and the Arbitrator arguing "there is no need for this arbitration" or requesting an adjournment of arbitration, but TADCO never disputed the arbitrability of the dispute or stated that the Arbitrator lacked jurisdiction. Rather, the focus of TADCO's general objections was the ripeness of the arbitration in light of outstanding issues relating to previous audits. Although TADCO's letters did include a general disclaimer, that "[n]othing contained herein shall be construed as a waiver or modification of, or forbearance from exercising any of TADCO's rights, powers and privileges at law and/or in equity," the case law is clear that TADCO must have objected specifically to the arbitrability of the dispute. TADCO had more than six months to so object, including at the December 11, 2006 arbitration hearing, but it did not. TADCO instead participated in the arbitration hearing on the merits. The Arbitrator took testimony and evidence, and DeMartino made oral arguments, introduced evidence and examined witnesses.

In an attempt to elicit sympathy from this Court, during oral argument on the motions *sub judice*, counsel for TADCO repeatedly referred to DeMartino's best efforts as a *pro se* litigant to object to the arbitration and reserve TADCO's rights. *See, e.g.*, Tr. at 9:21-12. As the Court made clear during oral argument, DeMartino cannot conveniently vacillate between *pro se* status and representation. While the Arbitrator observed that, with the exception of one adjournment request from TADCO's counsel, DeMartino had acted *pro se* in the arbitration, Award at 5, DeMartino himself indicated TADCO had retained counsel when he requested adjournment of the hearing due to his lawyer's scheduling conflict. That DeMartino frequently acted *pro se* did not exempt TADCO from the obligation to object specifically to arbitrability.

Because TADCO participated in the arbitration hearing on the merits and did not object to the arbitrability of the dispute, TADCO waived its right to so object now.

**B.     TADCO's Motion for Vacatur/Modification Time-Barred; Dispute Arbitrable**

TADCO moves to vacate or modify the Award on three separate grounds that the Arbitrator exceeded his authority. First, TADCO argues that the Arbitrator was not permitted to order TADCO to produce books and records for the period from April 1, 2004 through March 11, 2005, because this was not part of the submission. The issues submitted to arbitration were whether TADCO owed contributions for this period and whether TADCO was obligated to provide books and records for the period from March 12, 2005 through June 30, 2006. Award at

8

2. Second, TADCO argues that the Arbitrator was not permitted to order TADCO to produce "any and all books and records" because the CBA required production only of books and records necessary to ensure TADCO's compliance with the benefits contribution requirement. Third, TADCO argues that the Arbitrator was not permitted to require TADCO to pay the Funds $5,000 in attorneys' fees should the Funds need to enforce the Award in court because this was not in the CBA.

While the Funds dispute the merits of these claims, the Funds' principal argument is that TADCO's motion is time-barred by the applicable 90-day statute of limitations under New York law. *See Textile Workers Union v. Lincoln Mills of Ala.,* 353 U.S. 448, 457 (1957) (substantive law governing suits under LMRA Section 301 is "federal law . . . [b]ut state law, if compatible with the purpose of Section 301, may be resorted to in order to find the rule that will best effectuate the federal policy."); *Local 802, Associated Musicians of Greater New York v. The Parker Meridien Hotel*, 145 F.3d 85 (2d Cir. 1998) (applying 90-day statute of limitations under New York CPLR Section 7511(a) in action brought under LMRA Section 301); *Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*, 912 F.2d 608 (2d Cir. 1990) (same); *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537*, 47 F.3d 14 (2d Cir. 1995) (same).

Under New York Civil Practice Law and Rules ("CPLR") Section 7511(a), a party seeking vacatur or modification of an arbitration award must move within 90 days of the delivery of the award. Because TADCO received the Award on February 5, 2007, *see* Pls. Reply Exs. A and B, but did not move to vacate or modify until six months later on August 13, 2007, the Funds argue that TADCO's motion is time-barred. TADCO argues that the limitations period does not bar vacatur of an award where the underlying dispute was not arbitrable. *See Local Union No. 38, Sheet Metal Workers' Int'l Assoc., AFL-CIO v. Custom Air Systems, Inc.*, 357 F.3d 266, 267-68 (2d Cir. 2004). In that case the Second Circuit held that if one party to arbitration was not bound to arbitrate under the collective bargaining agreement, the arbitration award must be vacated without regard to the 90-day limitations period. *Id.* at 268. The party that moved for vacatur was not a signatory to the collective bargaining agreement. The Second Circuit remanded the case to the district court to determine whether the non-signatory nevertheless was subject to the agreement's arbitration clause because it was an alter ego of one of the signatories. *Id.* If the district court found that the non-signatory was bound by the arbitration clause under an alter ego theory, then the 90-day limitations period would bar its vacatur motion. In order to

9

resolve this prong of TADCO's defense the Court must first find that the dispute was or was not arbitrable.

*Arbitrability of the Dispute*

The presumption of arbitrability that normally exists in a dispute between an employer and a union that arises from a collective bargaining agreement, *see, e.g., United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960), does not apply to a dispute between an employer and the trustees of an employee benefit fund, even if the dispute relates to a collective bargaining agreement. *See, e.g., Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 371-73 (1984). A court must consider the language of the collective bargaining agreement and determine whether the parties to that agreement intended to permit an employee benefit fund to submit its disputes with the employer to arbitration. *Id.* at 373. The Supreme Court has held that "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

In a case very similar to the instant case, Judge Marrero ordered a preliminary injunction that barred the Funds from initiating arbitration against an Employer because the Funds were not entitled under the CBA to arbitrate a claim for delinquent contributions. *MI Installers & Furniture Serv., Inc. v. New York City Dist. Council of Carpenters Pension Fund*, 476 F. Supp. 2d 387, 392-93 (S.D.N.Y. 2007).[11] Judge Marrero interpreted the dispute resolution provisions in the CBA and trust agreements, which were nearly identical to the ones here, and found they provided for arbitration of disputes only between parties to the CBA and the Funds were not signatories to the CBA. *Id.*

*MI Installers* is distinguishable from the case at bar, however, because in *MI Installers* the Funds initiated arbitration to collect delinquent contributions from the Employer, while the Funds here initiated arbitration also to compel TADCO to furnish books and records as required by the CBA and Trust Agreement. Here, the Award itself only addresses TADCO's obligation to furnish books and records and does not order TADCO to pay delinquent contributions to the Funds, and thus I do not reach the availability of arbitration where the dispute is centered on money allegedly owed to the Funds. The Trust Agreement clearly required the Funds to arbitrate

---

[11] As Funds correctly observe, the Employer in *MI Installers*, unlike TADCO here, did not waive its right to object to the arbitration.

their claims for books and records, and that is all we decide here.

Because the issue decided by the Arbitrator was arbitrable, and more than 90 days elapsed between the delivery of the Award to TADCO and TADCO's motion for vacatur or modification, in contravention of the limitations period in CPLR Section 7511(a), TADCO's motion is time-barred.

### C.     Award Will Be Confirmed and Attorneys' Fees Granted to the Funds

Because TADCO waived any right to object to the arbitrability of the dispute and because TADCO's other grounds for vacatur or modification are time-barred, the Award is confirmed. TADCO will provide the Funds with the requested books and records required by the Award, will pay the Funds its $1,500 share of the Arbitrator's fee as required by the Award and will pay the Funds legal fees up to $5,000 incurred in prosecuting this confirmation action as required by the Award. The Arbitrator's award of attorneys' fees to the Funds was appropriate under the CBA, which provided that "[t]he arbitrator shall have full and complete authority to decide any and all issues raised by the submission and to award appropriate damages." CBA Art. XI § 11.

This Court, however, denies the Funds' request for costs incurred in prosecuting this confirmation action because TADCO did not act in bad faith. *See Burke v. Hogan*, 418 F. Supp. 2d 236, 243-44 (W.D.N.Y. 2005) (finding no basis to award costs in absence of bad faith). Nor has TADCO refused to abide by the Arbitrator's decision without justification, *i.e.*, its claims here were not frivolous. *See Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985) (costs may be proper when party opposing confirmation of arbitration award "refuses to abide by an arbitrator's decision without justification").

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to confirm the Award is GRANTED, Plaintiffs' motion for costs is DENIED, and Defendant's cross-motion to vacate is DENIED.

The Clerk of the Court is instructed to enter a Judgment in accordance with this Opinion and Order and to close this matter and remove if from my docket.

IT IS SO ORDERED.
New York, New York
February __, 2008

_____
U.S.D.J.

11